IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

# FILED

AUG 4 2006

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

LAURA K. THOMAS

     Plaintiff,

                             CIVIL ACTION NO. 1:06-CV-52
v.                             (Judge Keeley)


BRANCH BANKING AND TRUST COMPANY,

     Defendant.


## MEMORANDUM OPINION AND ORDER

Pending before the Court is the defendant's Rule 12(b)(6) motion to dismiss. The defendant contends that plaintiff's claims for breach of contract and breach of a secured party's duty to preserve collateral are barred by statutes of limitation. For reasons set forth below, this Court **DENIES** the defendant's motion.


## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 21, 2006, West Virginia resident Laura Thomas filed suit in this Court against Branch Banking and Trust Company ("BB&T"), a financial institution based in North Carolina. Her complaint describes a series of commercial banking transactions involving herself, her husband, Paul Thomas ("Mr. Thomas"), and One Valley Bank ("One Valley"), a predecessor of BB&T. These

transactions began in July, 1992, when Mr. Thomas applied for and received a $870,000 loan from One Valley to fund a real estate venture in Harrison County, West Virginia. He secured this loan by pledging as collateral 12,500 shares of stock that he held in State Bancorp, a West Virginia bank holding company. In March, 1994, Mr. Thomas entered into another loan agreement with One Valley to refinance his first loan and to borrow additional funds for his business endeavors. The value of this second loan totaled $1.95 million, and was partially guaranteed by a pledge from Mr. Thomas of an additional 8926 shares of Bancorp stock. In accordance with provisions in the two loan agreements, Mr. Thomas delivered the certificates of ownership and transferred his stockholder voting rights for a total of 21426 shares to One Valley. One Valley was to retain control of all the shares pledged by Mr. Thomas until all debt from both loans had been fully paid off.

Laura Thomas ("Thomas") became involved in these matters on December 29, 1995, when she signed a "Collateral Transfer Agreement" with her husband and One Valley. That agreement concerned the 8926 shares pledged by her husband to One Valley in 1994. By the transfer agreement's terms, Mr. Thomas's residual ownership interest in 6501 of those 8926 shares would be transferred to his wife. On April 2, 1996, the Thomases and One

2

Valley entered into a similar agreement regarding some of the shares that Mr. Thomas had pledged in 1992.

In her complaint, Thomas asserts that the last of the debt owed to One Valley/BB&T under the two loans was satisfied in February, 2003. At that time, Thomas traveled to the BB&T branch office in Morgantown, West Virginia to collect the certificates of ownership for her shares of Bancorp stock. Thomas alleges that BB&T conveyed certificates for all of the shares due to her under the 1996 transfer agreement, but only 2025 of the 6401 shares that she was entitled to under the 1995 agreement. She asserts that BB&T has continually refused to tender the certificates for the remaining 4076 shares or to provide an accounting of their status. Thomas alleges that BB&T's failure to tender those 4076 shares constitutes 1) breach of contract[1] and 2) breach of a secured party's duty to preserve collateral under Article 9 of the Uniform Commercial Code ("U.C.C."), W.Va. Code § 46-9-207.

BB&T filed a motion to dismiss this action under Fed. R. Civ. Pro. 12(b)(6) on June 2, 2006, contending that both of Thomas's

---

[1] Thomas's complaint actually contains two formal breach of contract claims. One demands restitution of the stock certificates, and the other, in the alternative, demands their monetary value. For present purposes, there are no significant differences between the two.

causes of action are barred by statutes of limitation. The motion has been fully briefed and is ripe for consideration.

## II. PROCEDURAL STANDARDS FOR DECISION

The purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint. Randall v. U.S., 30 F.3d 518, 522 (4th Cir. 1994) (citing Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991)). The legal conclusions contained in the complaint must be accompanied by factual allegations that are sufficient to support them. Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001). This Court must accept as true all well-pleaded factual allegations in the complaint, and must construe those allegations in the light most favorable to the plaintiff. Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may grant a motion to dismiss under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## III. ANALYSIS

BB&T contends that, as a matter of law, Thomas's breach of contract claims are barred by the time limits contained in the West

Virginia statute of limitations for contract actions. BB&T further argues that her Uniform Commercial Code cause of action is barred by a general two-year period of limitation for tort claims. This Court finds both of BB&T's major arguments unpersuasive.

## A. Breach of Contract

In her complaint, Thomas alleges that BB&T's inability or unwillingness to convey 4076 shares of Bancorp stock constitutes a breach of the 1995 collateral transfer agreement that she entered into with her husband and One Valley.[2] In general, breach of contract claims in West Virginia are subject to the time limitations contained in W.Va. Code § 55-2-6, which provides, *inter alia*, that an action to recover on the breach of a written and signed contract must be brought within ten years "after the right to bring the same shall have accrued." Thomas and BB&T concur that the ten-year period in § 55-2-6 applies to Thomas's breach of

---

[2] Thomas filed a surreply during the briefing process, making arguments relying upon the 1996 agreement . Although not specifically addressed by local rules, filing a surreply without leave of the Court is generally discouraged. In this case, the Court took cognizance of Thomas's surreply because BB&T's reply raised new issues. The Court has determined that it is not necessary to address either Thomas's surreply arguments or the new issues raised by BB&T in its reply in deciding this motion.

contract claims. The two sides, however, disagree on when the right to bring those claims accrued.

A claim within the scope of § 55-2-6 accrues "when the breach of the contract occurs or when the act breaching the contract becomes known." McKenzie v. Cherry River Coal & Coke Co., 466 S.E.2d 810, 817 (W.Va. 1995). The time of this accrual has been said to coincide with the time when the performance contracted for is to commence or when a payment becomes due. Gateway Communications, Inc. v. John R. Hess, Inc. 541 S.E.2d 595, 599 (W.Va. 2000) (quoting 51 Am. Jur. 2d, Limitation of Actions, § 160 (2000)).

In the instant case, Thomas asserts that her contract claims accrued in February, 2003, when BB&T failed to transfer certificates for the relevant 4076 shares of stock to her. BB&T, however, contends that Thomas's contract claims accrued on December 29, 1995, when Thomas, her husband, and One Valley entered into their relevant collateral transfer agreement. BB&T argues that Thomas's contract claims could not have accrued any later because BB&T's only duty under the 1995 transfer agreement was to allow Mr. Thomas to transfer his residual ownership interest in the shares of the stock to his wife. Thus, BB&T reasons that the breach of

contract claims could have accrued only if and when BB&T refused to allow the ownership transfer in 1995.[3]

BB&T's argument on this issue, however, contains at least one fatal flaw. In her complaint, Thomas does not aver that One Valley/BB&T breached an obligation to allow the stock transfer from her husband to go forward. Rather, she alleges that One Valley entered into a security contract with her and her husband in which she would receive, upon satisfaction of the two secured loans, some of the shares that Mr. Thomas had originally pledged as collateral to the bank.[4] (Complaint ¶ 22). Thomas further alleges that BB&T did not convey 4076 of those shares to her after the loans were fully paid off in February, 2003. (Compl. ¶ 20).

Taking those factual allegations as true, as this Court must at this stage of the litigation, it is clear that BB&T's obligation

---

[3] BB&T attached a copy of the 1995 collateral transfer agreement to its reply briefing. The Court has examined this document, but has not relied on its contents in deciding this motion. Therefore, there is no need to consider converting BB&T's motion to one for summary judgment. See Fed. R. Civ. Pro. 12(b)(6).

[4] It is a well-established rule that security contracts are invalid unless they are formed by a written agreement describing the collateral to be pledged. See Yost v. Huan, 512 S.E.2d 228, 231-232 (W.Va. 1998)(discussing the requirements for security agreements in Article 9 of the U.C.C.). In line with the mandate in Fed. R. Civ. Pro. 8(f) that pleadings are to be liberally interpreted, this Court construes Thomas's complaint to allege that the 1995 Collateral Transfer Agreement constitutes such a writing. The provisions of the U.C.C. governing secured transactions are discussed more extensively infra.

to convey the share certificates did not become due for performance until February, 2003. Consequently, Thomas's breach of contract claims did not accrue until BB&T allegedly failed to convey the certificates at that time. As Thomas filed her suit in March, 2006, her breach of contract claims are not barred by the ten-year limitation period for actions on written contracts contained in § 55-2-6.

## B. Breach of a Secured Party's Duty to Preserve Collateral

As discussed above, the parties agree that the ten-year period of limitation for actions on written contracts in § 55-2-6 governs Thomas's breach of contract claims, but disagree about when those claims accrued. In contrast, the parties dispute which statute of limitations applies to her claim for breach of duty to preserve collateral. As with her breach of contract claims, Thomas argues that the ten-year period contained in § 55-2-6 controls. BB&T, however, presses for application of the general two-year period of limitation for tort actions at W.Va. Code § 55-2-12.[5] Although the issue appears to be one of first impression in

---

[5] Subsection (a) of § 55-2-12 provides a two-year period of limitation for actions involving damage to property "for which no limitation is otherwise prescribed." Subsection (b) provides the same for personal injury actions.

West Virginia, a review of the state case law addressing similar issues, and of the background of the U.C.C. section undergirding Thomas's claim, leads this Court to conclude that the ten-year period of limitation at § 55-2-6 should apply.

Article 9 of the U.C.C., found at W.Va. Code § 46-9-101, *et seq.*, governs any "transaction, regardless of its form, that creates a security interest in personal property" . . . . W.Va. Code § 46-9-109(a)(1)(1995).[6] This includes transactions in which stock certificates are pledged as collateral to secure debt. See § 46-9-203(b)(D) (1995) ("collateral" as used in the article included "investment property"); § 46-9-102(a)(49) (1995) ("investment property" includes certificated stocks); See also Yost v. Huan, 512 S.E.2d 228, 230 (W.Va. 1998) (It is "unquestionable" that Article 9 governs pledges of certificated stock shares as collateral.). Section 207 of Article 9 requires that a secured party generally must "use reasonable care in the custody and preservation of collateral in the secured party's possession." W.Va. Code § 46-9-207(a) (1995).

---

[6] Because the relevant transfer agreement dates from 1995, this Court must rely on the U.C.C. version in effect at that time. Yost v. Huan, 512 S.E.2d 228, 230 (W.Va. 1998). The sections cited in this paragraph have since changed in language but not in relevant substance. Further references to the U.C.C. in this opinion are to the 1995 version unless otherwise noted.

9

Article 9 of the U.C.C. does not provide a statute of limitations for violation of Section 207, and a diligent search has failed to uncover any West Virginia case directly addressing the matter.  Unsurprisingly, however, the West Virginia Supreme Court of Appeals has dealt with other statutory causes of action that do not contain integrated periods of limitation.  The more specific question of whether a statutory claim should be governed by the limitation periods for contract actions found in § 55-2-12 or the period concerning tort actions in § 55-2-12 has come up in a number of instances, with West Virginia's highest court applying § 55-2-6 in some cases and § 55-2-12 in others.  Those cases provide guidance that this Court must now follow in determining which statute to apply to Thomas's U.C.C. claim.

### 1. State Cases Applying the Contracts Statute

The West Virginia Supreme Court of Appeals has repeatedly concluded that the contractual periods of limitation in § 55-2-6, rather than the tort action provisions of § 55-2-12, apply to statutory protections aimed at employer-employee relationships.  In the first modern case in that pattern, <u>Western v. Buffalo Min. Co.</u>, 251 S.E.2d 501, 504 (W.Va. 1979), the court dealt with an action to recover wages withheld under an assignment that violated W.Va. Code

§ 21-5-3, a provision of the West Virginia Wage Payment and Collection Act ("WPCA"). The court discussed the nature of § 55-2-12 as the default statute of limitations governing tort actions, but then summarily concluded that the plaintiffs' claims for wrongly withheld wages were contractual, rather than tortious, in nature. See Id. at 503. (claims against mining company and supermarket "rest[ed] on implied employment contract" and "bottomed on" written wage assignment contract, respectively).

The court more explicitly addressed the criteria for discriminating between statutory claims governed by § 55-2-6 and those governed by § 55-2-12 in Lucas v. Moore, 303 S.E.2d 739 (W.Va. 1983). At issue in Lucas was the question of the appropriate statute of limitations for a WPCA claim, under W.Va. Code § 21-5-4, for failure to pay former employees all wages due within 72 hours of dismissal. Id. at 741. After examining the language of the cause of action, the court concluded that the legislature had intended to create statutory liquidated damages for the unlawful withholding of wages. Id. The amount of damages recoverable under the statute therefore would be calculated based on the terms of a former employee's original employment contract. Moreover, the legislature intended the right to liquidated damages under the WPCA to be enforced as would any typical contractual

11

right.  Id.  The finding that "the legislature intended standard contractual remedies to operate" led the court to apply the ten-year period of limitation from § 55-2-6 rather than § 55-2-12's two-year tort limitation period. Id.

Other cases, relying on Western and Lucas, would later determine that all WPCA claims are governed by the provisions in § 55-2-6. See e.g. Jones v. Tri-County Growers, Inc., 366 S.E.2d 726, 729 (W.Va. 1988).  Most recently, the court has held that suits by public employees to recover retirement benefits promised by statute are contract actions that fall within the meaning of § 55-2-6.  Adams v. Ireland, 528 S.E.2d 197, 205 (W.Va. 1999) (per curiam).

The West Virginia Supreme Court of Appeals has also addressed the contract versus tort limitations dichotomy in another context: that of an action against one's insurance company to recover insurance policy benefits.  In Plumley v. May, 434 S.E.2d 406 (W.Va. 1993), the plaintiff, who had been injured in a car accident by a third-party tortfeasor, sued his insurer under W.Va. Code § 33-6-31(b) to recover underinsured driver accident benefits.[7]  In

---

[7]     As stated by the court, W.Va.Code 33-6-31(b) "contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. . . ." Plumley, 434 S.E.2d at 408 n. 1.

considering the facts forming the basis of the plaintiff's claim, the court conceded that the personal injury component of the case was tortious in nature. See Plumley, 434 S.E.2d at 410 ("Admittedly, in the absence of the automobile accident for which Mr. Plumley had a tort action against the tortfeasor, this contractual obligation [between the plaintiff and his insurance company] would not have arisen."). Nevertheless, the court did not view the plaintiff's actual claim as a tort claim:

> [T]hat interdependency [between the tortious nature of the accident and the insurer's obligations] does not alter the character of the action. Indeed, a portion of the action will determine damages suffered by Mr. Plumley as a result of the tortfeasor's negligence. Again, however, the ultimate basis for the suit is contractual.

Id.

In explaining its decision finding that the plaintiff's claim was contractual in nature, the Court offered two main rationales. First, the plaintiff and the defendant were engaged in a contractual insurance relationship without which the defendant could not have been held liable for the actions of the third-party tortfeasor. Id. (quoting Perkins v. Doe, 350 S.E.2d 711, 715 (W.Va. 1986) (Brotherton, J., dissenting) for the proposition that "[u]ninsured motorist protection is not a common law right of action. It . . . exists only by statute and in the individual policy."). Second, while the plaintiff would need to prove fault

on the part of the tortfeasor and the amount of damages caused by the accident to recover benefits from his insurance company, he would not be doing so in order to pursue an independent tort action, but rather to show the existence and the extent of the insurer's liability under the insurance contract. Id. (discussing Murphy v. United States Fidelity & Guar. Co., 458 N.E.2d 54, 57 (Ill. App. 1983) and Uptegraft v. Home Ins. Co., 662 P.2d 681, 685 (Okla. 1983)). The court, therefore, reversed the trial court's application of the two-year statute of limitation period from § 55-2-12 and concluded that the claim had been timely filed under § 55-2-6.[8] Id. at 411.

### 2. State Cases Applying the Tort Statute

These decisions notwithstanding, there are significant and recent cases in which West Virginia's highest court has refused to apply a longer limitation period and, instead, has barred claims under the two-year tort limitation periods in § 55-2-12. BB&T

---

[8] In a subsequent case, the West Virginia Supreme Court held that provisions in § 55-2-12 govern underinsured benefit claims where the third-party tortfeasor is a *John Doe* defendant rather than an identified person. Dalton v. Doe, 540 S.E.2d 536, 541 (W.Va. 2000). The Dalton court distinguished Plumley in its opinion, though without meaningful elaboration. Id. As Plumley has not been expressly criticized or overruled, this Court views it as a valid guidepost in addressing the statute of limitations issue at hand.

points specifically to Taylor v. Ford Motor Co., 408 S.E.2d 270
(W.Va. 1991), as an instance in which the court applied the two-
year period from § 55-2-12 to bar a plaintiff's U.C.C. claim.
Unlike any of the cases previously discussed, Taylor involved a
cause of action already connected generally with a statute of
limitations: breach of implied warranty under U.C.C. Article 2.
See W.Va. Code § 46-2-725(1) (actions for breach of sales contracts
under Article 2 must be commenced within four years). However, the
court in Taylor construed the plaintiff's U.C.C. claim as falling
within § 55-2-12, rather than the U.C.C. Article 2 limitations.
Taylor v. Ford Motor Co., 408 S.E.2d at 274.

     The West Virginia court justified setting aside the integrated
statute of limitations in Article 2 by focusing on the fact that the
failure of the product in Taylor, a Ford Bronco II, allegedly caused
personal injury to plaintiffs.  As the court noted: "Tort law
traditionally has been concerned with compensating for physical
injury to person or property.  Contract law has been concerned with
the promises parties place upon themselves by mutual obligation."
Id. at 273 (quoting Star Furniture Co. v. Pulaski Furniture Co., 297
S.E.2d 854, 859 (W.Va. 1982)).  Furthermore, the court placed
emphasis on the difference between a "bad bargain" contractual
theory of recovery for loss of economic value due to a product

15

defect, and tort theories of recovery for injuries to persons or property in "a sudden calamitous event" caused by a product defect. Id. (again quoting Star Furniture, 297 S.E.2d at 854). Thus, courts should "look to tort principles where personal injuries are involved," and should be mindful "that a sudden calamitous event is the hallmark of many tort injuries." Id. Relying on this conclusion, and on several policy considerations that balanced in favor of applying the tort statute of limitations, the court in Taylor held that the two-year period of limitation contained in § 55-2-12 applied to claims of breach of express or implied warranties where a person seeks to recover damages for personal injuries. Id. at 274.

The court again elected to apply the tort rather than the contract statute of limitations in Wilt v. State Auto Mut. Ins. Co., 506 S.E.2d 608 (W.Va. 1998). That case involved a cause of action under W.Va. Code § 33-11-4 against an insurance company for unfair insurance claim settlement practices. Id. at 609. The plaintiffs asserted that the ten-year limitation period from § 55-2-6(a) applied to their claim, arguing by analogy to the statutory insurance claim that was deemed to arise in contract in Plumley. Id. The Court rejected this analogy, pointing out that Plumley involved a direct suit by an insured against his insurance company

to recover benefits created by an insurance policy, while the unfair settlement claim made by the <u>Wilt</u> plaintiffs was purely statutory and not based on the terms of a contract between the parties. <u>Id.</u> at n. 9.

The <u>Wilt</u> plaintiffs also raised the argument that their action was contractual in nature because the damages available under W.Va. Code § 33-11-4 were more limited than those traditionally allowed in tort. The court reminded the plaintiffs that it had previously ruled that attorneys' fees and punitive damages were recoverable in actions under the statute, and, observing that such remedies "are clearly not typical of damages awarded in contract cases," rejected their characterization. <u>Id.</u> at 610.

### 3. The Instant Case

From the case law discussed above, certain criteria for determining whether a statutory cause of action is governed by the statute of limitations for contract or tort actions are apparent. The central inquiry is whether the legislature intended recovery to consist of damages arising from a contractual relationship between the parties or, instead, to include the possibility of winning damages traditionally associated with tort actions. Where a plaintiff's damages must be calculated by making reference to the

terms of a contract with the defendant, or where they relate to economic losses suffered as a result of a breach, the limitation provisions of § 55-2-6 apply. See e.g. Western, 251 S.E.2d at 504; Lucas, 303 S.E.2d at 741; Plumley, 434 S.E.2d at 410. However, where a plaintiff alleges that a defendant's conduct caused physical harm to persons or property, damages are controlled by the common law of torts and a two-year limitation period from § 55-2-12 applies. See Taylor, 408 S.E.2d at 274; Wilt, 506 S.E.2d at 610. These standards, based on the nature of a plaintiff's claim, are consistent with the general approach that other jurisdictions take to resolving similar statute of limitations issues. See generally 51 Am. Jur. 2d Limitation of Actions § 129 ("To determine which period to apply, it is necessary to examine the substance of the action to identify the relationship out of which the claim arises and the relief is sought. The nature of the remedy, rather than the theory of liability, is the salient consideration.").

In the instant case, if Thomas were to prevail on her claim that BB&T breached its statutory duty to preserve collateral, the amount and type of the damages that she could recover would be related to the value of the stock shares pledged as collateral and not conveyed by One Valley/BB&T. The number of shares involved, and, by extension, the monetary value recoverable, would ultimately

18

be measured by reference to the number of shares stated in the 1995 collateral transfer agreement between the Thomases and One Valley/BB&T. Furthermore, the type of damages available would be consistent with those recoverable in contract actions. Thomas could seek damages under the U.C.C. to put her "in as good a position as if the other party had fully performed," W.Va. Code § 46-1-106 (1995), which is also the typical standard of recovery for contract claims. The unavailability of punitive damages or an award of attorneys' fees, see id., would be consistent with the common law rules generally barring such remedies in contract cases. See Wilt, 506 S.E.2d at 610 (discussed above). These considerations lead toward the conclusion that Thomas's U.C.C. claim is contractual in nature and therefore is governed by § 55-2-6.

BB&T, however, argues that this Court should compare Thomas's U.C.C. claim to the U.C.C. implied warranty claim in Taylor, which the West Virginia Supreme Court of Appeals held was barred by § 55-2-12. It contends that the requirement to use reasonable care to preserve collateral found in W.Va. Code § 49-6-207 is, in essence, an implied warranty. BB&T, unfortunately, cites no authority to support this contention and offers no meaningful discussion of why it is correct. Indeed, this Court sees little commonality between the two claims. An implied warranty under U.C.C. Article 2 is a

19

statutorily-mandated minimum guarantee of a product's quality;
Section 207 of Article 9, on the other hand, requires secured
parties to take care to preserve the collateral of their loan
debtors.  The two provisions appear to share no more similarity than
any other two requirements chosen at random from the U.C.C., and
BB&T has not brought any other comparison to the Court's attention.[9]

There is, however, a more substantial comparison to be made
involving Thomas's claim for failure to preserve collateral.   A
number of authorities have expressed the view that a secured party's
intentional refusal to tender collateral in its control after the
underlying secured obligation is satisfied is actionable under the
tort of conversion.   See e.g. Telemark Development Group, Inc. v.
Mengelt, 313 F.3d 972, 977 (7th. Cir. 2002) (under Illinois law,
secured party's main duty is to relinquish collateral upon
satisfaction of obligation and "refusal to do so amounts to wrongful
conversion."); 68A Am. Jur. 2d Secured Transactions § 488 ("When the
debt for which the collateral was assigned as security is
discharged, the creditor must return the collateral to the debtor.

---

[9] BB&T also cites to a case from Vermont, DaimlerChrysler Services
v. Ouimette, 830 A.2d 38 (2003), to support its contention that a U.C.C.
Article 9, Section 207 claim is controlled by the statute of limitations
for tort actions.   Ouimette is inapposite for several reasons, not the
least of which is that Vermont has one statute of limitations for all
civil actions, whether contractual or tortious in nature.   See 12 V.S.A.
§ 511.

Failure to do so is a conversion." (footnotes omitted)). In West Virginia, the limitation normally applicable to a claim of conversion is the two-year period in § 55-2-12(a). <u>Cart v. Marcum</u>, 423 S.E.2d 644, 646, (W.Va. 1992).

Were this Court to analogize between Thomas's § 46-9-207 claim and a cause of action for refusal to relinquish collateral, it would need to decide whether the latter is governed by the two-year period found at § 55-2-12(a) as is a conventional tort action for conversion where there is no privity of contract. As recognized by the drafters of the current version of the U.C.C., however, a § 46-9-207 claim has historically been viewed differently from a claim for failure to relinquish collateral:

> **Duty to Relinquish Possession.** Although Section 9-207 addresses directly the duties of a secured party in possession of collateral, that section does not require the secured party to relinquish possession when the secured party ceases to hold a security interest. Under common law, absent agreement to the contrary, the failure to relinquish possession of collateral upon satisfaction of the secured obligation would constitute a conversion. Inasmuch as problems apparently have not surfaced in the absence of statutory duties under former Article 9 and the common-law duty appears to have been sufficient, this Article does not impose a statutory duty to relinquish possession.

W.Va. Code § 46-9-208, Official Comment 4 (2006). A failure to relinquish collateral is a breach of duty at common law and not a U.C.C. violation; a claim for failure to relinquish is not

**MEMORANDUM OPINION AND ORDER**

necessarily subject to the same type of damage limitations contained in W.Va. Code § 46-1-106 (for instance, the general bar against punitive damages). Thus, a § 46-9-207 claim is not sufficiently similar to a common law claim for failure to relinquish collateral to determine that both must sound either in contract or tort.

In light of the contract-based measure of the damages recoverable in a § 46-9-207 claim and the applicability of general U.C.C. restrictions on the type of damages recoverable, this Court concludes that the West Virginia legislature intended that claims brought under § 46-9-207 be limited by the ten-year period in § 55-2-6. As Thomas's claim for breach of duty to preserve collateral under § 46-9-207 accrued in February, 2003, when she allegedly learned that BB&T had lost her stock certificates, it is not barred by the statute of limitations.

### IV. CONCLUSION

The ten-year period of limitation for written contracts contained in W.Va. Code § 55-2-6 applies to both of Thomas's claims, and both claims were properly filed within ten years after they accrued. Accordingly, the Court **DENIES** the defendant's motion to dismiss.

It is so **ORDERED.**

22

## MEMORANDUM OPINION AND ORDER

The Clerk of the Court is directed to transmit copies of

this Memorandum Opinion and Order to counsel of record.

DATED August _____4_____ , 2006.

_Irene M. Keeley_

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE